UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SANDRA SEEGERT, individually and on behalf of all others similarly situated,

                                    Plaintiff,

v.

REXALL SUNDOWN, INC.,

                                    Defendant.

Case No.: 17-cv-01243-JAH (JLB)

**ORDER DENYING NON-PARTY THE NIELSEN COMPANY (U.S.), LLC'S MOTION FOR PROTECTIVE ORDER**

**[ECF No. 77]**

 

Before the Court is a motion for protective order filed by non-party The Nielsen Company (U.S.), LLC's ("Nielsen"). (ECF No. 77.) The Court has reviewed the motion, the parties' supplemental briefs, and all related filings, and for the following reasons **DENIES** Nielsen's motion for protective order.

## I.    BACKGROUND

### A.    Factual Background

On June 19, 2017, Plaintiff Sandra Seegert ("Plaintiff") filed a class action complaint against Defendant Rexall Sundown, Inc. ("Defendant") in connection with its "Osteo Bi-Flex" joint health products. (ECF No. 1.) On December 29, 2017, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 31.) In her FAC, Plaintiff alleges that Defendant engages in false and misleading advertising of four Osteo Bi-Flex dietary supplements.

(*Id.* at 2-3, 5.)  Plaintiff further alleges that Defendant falsely claims that the products provide meaningful joint health benefits.  (*Id.*)

On or about February 20, 2017, Plaintiff purchased one of Defendant's products, Osteo Bi-Flex Triple Strength, in reliance on the product's advertising.  (*Id.* at 4.)  Plaintiff alleges the product could not provide the promised benefits and, as a result of her purchase, she "suffered injury in fact and lost money."  (*Id.* at 5.)

Plaintiff brings the following claims against Defendant: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*; and (2) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.  (*Id.* at 33-38.)  Plaintiff brings each claim on behalf of herself and the following putative class: all persons who purchased in the state of California any of the Osteo Bi-Flex products for personal use between January 19, 2016, and the date notice is disseminated.  (*Id.* at 31, 33, 36.)  Plaintiff seeks restitution and disgorgement of all profits and unjust enrichment, as well as actual and punitive damages.  (*Id.* at 38.)

Plaintiff claims that Defendant manufactures and sells its Osteo Bi-Flex products to retailers directly and through wholesalers, who in turn sell the products to retail consumers.  (ECF No. 59 at 5.)  Plaintiff further claims that Defendant carefully tracks the retail sales of its products in the ordinary course of business and gathers granular retail sales data from two types of sources.  (*Id.*)  The first source is large retailers.  (*Id.*)  The second is Nielsen, the primary company in the United States that gathers this type of data for nearly all large consumer goods manufacturers.  (*Id.*)  Plaintiff contends that this data is crucial to Defendant's marketing, sales, inventory, and other business decisions, and is needed by Plaintiff to "to calculate damages and restitution, evaluate the case for settlement[,] and demonstrate at the class certification stage that relief can be determined on a class wide basis."  (*Id.* at 5-6.)

## B.    Procedural Background

On January 11, 2019, Plaintiff moved to compel further responses to the following discovery requests she served on Defendant: (1) Subject Matter No. 15 in her Rule 30(b)(6)

2

Notice; (2) Document Request No. 5 served in connection with her Rule 30(b)(6) Notice; (3) Requests for Production Nos. 37 and 52; and (4) Interrogatories Nos. 8-10. (ECF No. 59-1 at 3-7.)

Specifically related to Nielsen, Plaintiff requested testimony regarding the data Defendant possesses relating to the "retail sales of Osteo Bi-Flex," including data obtained from Nielsen. (ECF No. 59-1 at ¶ 7, Exh. A.) Plaintiff also requested: (1) documents sufficient to show the "total wholesale and retail sales of each of the Osteo Bi-Flex products, including each count variation thereof, in California between January 19, 2016 and the present"; (2) "[a]ll documents evidencing or summarizing the retail sales of Osteo Bi-Flex, including but not limited to syndicated vendor consumption data (*e.g.*, Nielsen . . . )"; and (3) "[a]ll documents which reflect, summarize, analyze or discuss the pricing of Osteo Bi-Flex, including wholesale or retail prices." (*Id.*) In addition, Plaintiff sought by way of interrogatory the total retail sales, the total number sold, and the average retail prices for each of the Osteo Bi-Flex products, including each count variation thereof, in California. (*Id.*)

Defendant objected to each of these requests on several grounds including, *inter alia*, that the retailer sales information that Plaintiff sought is not within Defendant's "possession, custody, or control." (*See id.*) Defendant conceded, however, that it has possession of the requested Nielsen information. (ECF Nos. 60 at 8, n. 8; 60-2 at 3, ¶ 11.)

Defendant also objected to the document requests to the extent they call for "documents or information owned by third-parties and protected by a third-party confidentiality agreement." (ECF No. 59-1 at ¶ 7, Exh. A.) Defendant has a license to access Nielsen's data collections pursuant to a contract, which contains a confidentiality provision. (ECF No. 60 at 6-7.) Plaintiff attached a redacted version of this contract to her motion to compel. (*See* ECF No. 70-1 at 17-18.)

///

///

///

Nielsen's contract with Defendant provides, in relevant part, as follows:

> Except to the extent that applicable law, court order or regulation prohibits Client from disclosing to Nielsen that Nielsen information is to be used or disclosed in a legal or administrative proceeding or pursuant to law or regulation, **no Services or Nielsen Information may be disclosed in any legal or administrative proceeding or pursuant to law or regulation without Nielsen's prior written consent**. **If such use is compelled by legal process, Client shall promptly give Nielsen advance written notice**, if permitted by law, regulation or court order **and, before such use, obtain confidentiality agreements, protective orders and evidentiary stipulations reasonably acceptable to Nielsen** and shall limit the use to the minimum necessary to comply with such legal requirement.

(ECF No. 70-1 at 18 (emphasis added); *see also* ECF No. 84-1.)[1] Defendant claimed that the contract language cited above prohibited it from producing Nielsen's information in discovery absent consent from Nielsen or a court order. (ECF No. 60 at 11-12.)

After analyzing the limited data before it at the time, the Court granted Plaintiff's motion to compel as to the Nielsen data, but gave Nielsen an opportunity to move for a protective order in this matter prior to production. (*See* ECF No. 72 at 15-17.) On April 11, 2019, Nielsen availed itself of that opportunity and filed the pending motion for protective order. (ECF No. 77.) On May 13, 2019, the Court held a hearing on the motion and ordered supplemental briefing. (ECF No. 90.) In accordance with this order, the parties filed supplemental briefing in a timely manner. (*See* ECF Nos. 92-95.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). Upon a motion being filed, "[t]he court may, for good cause, issue an order to protect [the] party or person from annoyance, embarrassment,

---

[1]    As Nielsen publicly quoted, cited to, and discussed this Master Services Agreement provision in its supplemental briefing, *see* ECF No. 95, the Court does not find good cause to issue a redacted version of this Order.

oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery; . . . [or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (G).

To determine whether a protective order is warranted, courts apply a two-part test. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424-25 (9th Cir. 2011). First, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. *Id.* at 424; *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003); *San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to merit a protective order the party must make "particularized showing of good cause with respect to any individual document"); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554-55 (C.D. Cal. 2007) ("In the case of trade secrets, the moving party must show (a) that the information is a 'trade secret or other confidential research, development, or commercial information,' under Rule 26(c)[(1)(G)] and (b) that its disclosure would be harmful to the party's interest in the property.").

If a court finds the party seeking protection has established that such harm will result from disclosure of information to the public, the court proceeds to the second part of the test: balancing the public and private interests to decide whether a protective order is necessary. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424. The Ninth Circuit has directed courts doing this balancing to consider the following factors :

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party

benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at 424, n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). "But even when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Id.* at 425 (citing *Foltz*, 331 F.3d at 1136-37).

In determining whether a protective order should issue, a district court must "identify and discuss the factors it considered in its 'good cause' examination to allow appellate review of the exercise of its discretion." *Foltz*, 331 F.3d at 1130 (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

///
///
///
///
///
///
///
///
///
///
///
///
///
///

## III.   DISCUSSION

The parties do not dispute that the requested information is relevant[2] and that the information is in the possession, if not the custody or control, of Defendant.[3] (ECF Nos. 60 at 4, 8, n. 8; 60-2 at 3, ¶ 11.) Moreover, neither Defendant nor Nielsen claim any specific privilege, *e.g.*, attorney-client privilege, over the information.  Therefore, in the normal course, Plaintiff would be entitled to obtain the requested discovery.  *See* Fed. R. Civ. P. 26(b).

Defendant initially objected to producing the requested information based on its contract with Nielsen.  (ECF No. 60 at 11-12.)  The Court was not persuaded by Defendant's arguments based on the limited data before it at the time.  (ECF No. 72 at 13-17.)  Therefore, the Court granted Plaintiff's motion to compel as to the Nielsen data, but recognizing the potential sensitivity of the information, gave Nielsen an opportunity to move for a protective order in this matter prior to production. (*See id.* at 15-17.)  Presently before the Court is Nielsen's motion for protective order.  (ECF No. 77.)  Nielsen seeks a protective order on the basis that Plaintiff is "using the discovery process to obtain the commercial product and intellectual property of Nielsen, and to use Nielsen's property and expertise in this litigation, without Nielsen's consent."  (ECF No. 77-1 at 13.)

---

[2]     The parties do not dispute the relevancy of the requested sales data.  (ECF Nos. 59 at 5-6; 60 at 4 ("Rexall does not object to the relevance of the requested sales data.").)  Nielsen argues that the requested data is of limited value because Nielsen does not project retail sales data for the State of California.  (ECF Nos. 77-1 at 14, 15 n.1; 88 at 6.)  However, Plaintiff asserts that the requested sales data is still of value to her, noting that "[d]amages experts make statistical extrapolations all the time."  (ECF No. 84 at 18.)

[3]     As the Court previously recognized, "[t]he phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met." *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (quoting *Cumis Ins. Society, Inc. v. South-Coast Bank*, 610 F. Supp. 193, 196 (N.D. Ind. 1985))."  (*See* ECF No. 72 at 5.)

The Court will first address the question of whether it is requiring Defendant to produce documents in purported violation of its contract with Nielsen. The Court acknowledges the inherent tension in the contract, which provides that Defendant may generally not disclose Nielsen information in any legal proceeding or pursuant to law without Nielsen's prior consent.[4] (ECF No. 70-1 at 18.) However, the contract further provides for how Defendant is to proceed if compelled to turn over the Nielsen data "by legal process." (*Id.*) The parties agree Nielsen's contract with Defendant is governed by Delaware law. (*See* ECF Nos. 93, 95.) Accordingly, at the hearing, the Court instructed the parties to submit supplemental briefing on the issue of whether Delaware law includes discovery requests within the meaning of "legal process." (ECF No. 90.)

In its supplemental brief, Nielsen states that "Delaware courts recognize that the expression 'compelled by legal process' means a court order granting a party's motion to compel, and not a mere discovery request." (ECF No. 95 at 6-7.) Nielsen relies on *Hughes v. Kelly*, No. C.A. No. 4814-VCN, 2010 WL 3767624 (Del. Ch. June 30, 2010), in support of this contention. (ECF No. 95 at 7-8.) In *Hughes*, the counterclaimant sought damages for the counter defendants' alleged breach of a non-disparagement agreement. 2010 WL 3767624, at *6. The counterclaimant alleged that the counter defendants induced a third party to bring a lawsuit against him in order to damage his reputation. *Id.* at *2. The parties' non-disparagement agreement provided that each member shall not, directly or indirectly, "engage in any conduct or make any statement disparaging or criticizing, or that could reasonably be expected to impair the reputation or goodwill of . . . the Managing Member, . . . in each case *except to the extent required by law or legal process*, after

---

[4]     Nielsen has consented to the production of its information in other cases. *See, e.g.*, *WPIX, Inc. v. Broad. Music, Inc.*, No. CV 11-4052-SJO JEMX, 2011 WL 9753912, at *7 (C.D. Cal. July 5, 2011) ("[A] limited waiver of the limitation on disclosure in Nielsen agreements has been negotiated and agreed to with Nielsen.").

consultation with the Managing Member to the extent possible." *Id.* at \*6 (emphasis added).

On a motion to dismiss, the counter defendants sought dismissal of the breach of contract claim arguing, in relevant part, that the mere filing of a civil complaint constitutes "legal process" and therefore the third-party lawsuit constituted an exception under the agreement. *Id.* at \*7. The court determined that the counter defendants had not met their burden on a motion to dismiss of establishing that the term "legal process" could be "read as expansively as they would have it be." *Id.* The court further reasoned that by "focusing on the definition of 'legal process,' [the counter defendants] have ignored the operative language in the non-disparagement provision: that 'disparagement' is forbidden 'except to the extent required' by law or legal process. The inclusion of the word 'required' suggests mandated disclosure and that the limits to the legal process exception are closer to those suggested by [the counterclaimant]." *Id.* In so holding, the court cited a Ninth Circuit case relied on by the counterclaimant, *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1249 (9th Cir. 2009), *rev'd on other grounds sub nom.*, *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), noting that a "district court's discovery order compelling the production of documents would be a disclosure 'required by law.'" *Hughes*, 2010 WL 3767624, at \*7 n.29.

Based on the foregoing, Nielsen concludes that "inclusion of the word 'compelled' in Nielsen's master services agreement necessarily implies compulsory process, such as an order granting a motion to compel." (ECF No. 95 at 8.) Nielsen cites additional Delaware authority suggesting that compelled by legal process means that a party's disclosure is "required by law, 'or pursuant to subpoena, civil investigative demand, or other compulsory process.'" (ECF No. 95 at 8 (citing *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 56 A.3d 1072, 1135, n. 239 (Del. Ch. 2012)).) Nielsen also cites Black's Law Dictionary, which defines the "word 'compulsory', which follows from 'compelled', [as] 'involuntary; forced; coerced by legal process or by force of statute." (*Id.* (citing Black's Law Dictionary (5th ed. 1979) at 260).) Therefore, Nielsen contends that the mere

service of a discovery request does not fall within the contract's exception for disclosure "compelled by legal process" and does not permit Defendant to produce the requested information in its discovery responses. Rather, Nielsen argues, the expression "compelled by legal process" clearly contemplates a court order. (*Id.* at 9-10.)

Assuming, without deciding, that Nielsen's interpretation of the phrase "compelled by legal process" is correct under Delaware law,[5] the Court has already granted Plaintiff's motion to compel and compelled the production of Nielsen's information absent a showing by Nielsen that the information should be protected. Thus, even under Nielsen's interpretation, the contractual requirements for production are satisfied.[6] The production has been compelled by Court order, subject to the outcome of the present motion for protective order. Therefore, the Court will now turn to address Nielsen's motion for protective order.

Nielsen moves for a protective order on the basis that the requested information contains trade secrets and constitutes an expert opinion. (ECF No. 77.) Nielsen states that

_____

[5] *But see Stevens v. Indep. Newspapers, Inc.*, No. CIV.A. 85C-OC11, 1988 WL 25377, at *8-9 (Del. Super. Ct. Mar. 10, 1988) (Delaware law contemplates discovery as a form of "legal process"). *See also* Fed. R. Civ P. 34 (a party "must respond" to a request for production); Fed. R. Civ. P. 33 (the interrogatories "must be answered"). Nielsen has not cited any authority suggesting that responding to discovery requests is anything but compulsory.

[6] Nielsen states in its supplemental brief:

When the Court entered an order compelling [Defendant] to disclose the Nielsen data, despite its contractual obligations under the confidentiality provisions of the license, that disclosure would be "compelled by legal process," and it would thus trigger [Defendant's] further obligations under Section 3.7 to obtain, before such disclosure and use, "confidentiality agreements, protective orders and evidentiary stipulations reasonably acceptable to Nielsen," limiting the use of Nielsen's data to the minimum necessary to comply.

(ECF No. 95 at 10 (citing ECF No. 85-2 at ¶ 3.7).) Based on the foregoing, any subsequent production by Defendant would not be in "breach" of its contract with Nielsen.

it is "in the business of collecting, compiling and analyzing specialized market data and creating copyrighted reports based on such data, particularly as such data relate to consumer packaged goods." (ECF No. 77-2 at ¶ 2.) During the hearing on the motion for protective order, Nielsen further explained that Defendant has a license that provides it access to certain portions of a database that is compiled by Nielsen based on sample data gathered by Nielsen from various sources around the country. Nielsen's sources include panel data and scanner data. Panel data is gathered from a recruited panel of consumers selected for their demographic qualities so that conclusions can be drawn from their behaviors as to what kinds of behaviors are happening among consumers of similar demographics across the country. Scanner data is gathered from grocery store and other retail outlets' checkout lines when a consumer's purchase is passed over the checkout scanner. The scanners record the price for that purchase and how much inventory of that given product went out the door on that particular day.

Using that data, Nielsen applies trade secret algorithms to project conclusions about larger markets. The projections are then made available to retailers and manufacturers, such as Defendant, for a licensing fee. Defendant does not have access to the raw data or the algorithms, only the products of the modeling and analytics activity. Depending on the scope of its license, Defendant could theoretically formulate a query and obtain information regarding how many units were sold at multiple different price points for a certain product. This information is available on a nationwide basis and for defined metropolitan markets, *e.g.*, San Francisco and Los Angeles. Nielsen does not project retail data for the entire State of California. The output of the query would typically be in the form of a spreadsheet or power point.

In seeking a protective order, Nielsen states that its "reports, studies, analyses and data are [its] commercial product, its stock-in-trade." (ECF No. 77-1 at 8.) Nielsen contends that its reports and information "have substantial commercial value, and their analysis and production require the service of skilled professionals." (*Id.*) Nielsen attaches

and cites to several unpublished cases[7] which purport to "apply settled law prohibiting litigants from conscripting an unretained expert such as Nielsen to provide expert market research testimony in the case, against the company's will, and contrary to Nielsen's own commercial interests." (*Id.*)

In making these arguments, Nielsen relies on case law involving subpoenas served on Nielsen under Federal Rule of Civil Procedure 45.[8] (*See* ECF No. 77-1 at 6-13.) However, the present motion for protective order is not before the Court on a motion to

---

[7] *See Conroy v. Fresh Del Monte Produce, et al.*, J.C.C.P. 4446 (Super. Ct. Alameda County, CA, March 9, 2007) (ECF No. 77-5); *In re Cigarette Antitrust Litig.*, No. 01 C 2713 (N.D. Ill. May 17, 2001) (ECF No. 77-6); *In re Chocolate Confectionary Antitrust Litig.*, No. 11 MC 264-P1 (NRB) (S.D.N.Y. September 15, 2011) (ECF No. 77-7). The Court takes judicial notice of these opinions. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating that federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks and citation omitted)).

[8] Under Rule 45, a court may, but is not required to, quash or modify a subpoena if the subpoena requires the disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). The rule was promulgated to curb the "growing problem" of "the use of subpoenas to compel the giving of evidence and information by unretained experts." Fed. R. Civ. P. 45 Advisory Committee's note. "As the Advisory Committee notes on the 1991 amendment to Rule 45 illuminate, Rule 45(c)(3)(B)(ii) [renumbered 45(d)(3)(B)(ii) in 2013] was designed to 'provide[] appropriate protection for the intellectual property of the non-party witness . . . .'" *In re Public Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 76 (D. Mass. 2006) (quoting Fed .R. Civ. P. 45(c)(3)(B)(ii) Advisory Committee's note, subsequently renumbered 45(d)(3)(B)(ii)); *see also MedImmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010 WL 2794390, at *1 (N.D. Cal. July 15, 2010). Thus, the rule "was designed to protect experts from being required to provide expert advice or assistance without proper compensation." *Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*, No. CIV 05–380, 2007 WL 1306734 *4 (D.N.M. Feb. 16, 2007).

quash a Rule 45 subpoena.[9]  Therefore, the Court is guided by the "good cause" analysis of Rule 26.  *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 426 (Rule 26(c)(1) applies to "third parties who are not part of the litigation").

As stated above, "[f]or good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-11.  Here, the Court finds that Nielsen has not made a showing that any specific prejudice or harm will result from the *production of* the requested information in this case.[10]  At most, Plaintiff is seeking a spreadsheet containing the number of Osteo B-Flex products sold and the price of each of those products at the time of sale.  This type of information, *i.e.*, the price of the product and whether it was purchased, is not inherently confidential.  What makes the information subject to trade secret protection is the process involved in getting to the final numbers.[11]  However, Plaintiff is not requesting

---

[9]  The Court notes that in one of the cases cited by Nielsen, *In re Cigarette Antitrust Litig.*, No. 01 C 2713 (N.D. Ill., May 17, 2001), the plaintiffs, in addition to issuing a Rule 45 subpoena to ACNielsen, had also requested the ACNielsen data from the defendants, "which Defendants produced at least in part." (ECF No. 77-6 at 3.)  The court order in *In re Cigarette Antitrust Litig.* upon which Nielsen relies here addressed only the propriety of serving a Rule 45 subpoena on nonparty ACNielsen.  (*Id.*)

[10]  The Court's discussion in this Order is limited to the question of whether Nielsen is entitled to a protective order requiring that the requested information not be produced.  *See* Fed. R. Civ. P. 26(c)(1).  Plaintiff does not argue in its opposition that the information should be made public or that Defendant (or Nielsen) may not designate the information as "Confidential" or "Highly Confidential" pursuant to the terms of the existing Protective Order (ECF No. 49).  In fact, Plaintiff states in its opposition that "[Defendant] will be designating [the information] as confidential information pursuant to [the Protective Order], which will address all of Nielsen's stated concerns.  (*See* ECF No. 85 at 6.)

[11]  *See* ECF No. 77-1 at 6-7 (Nielsen's "confidential and proprietary methods of gathering and analyzing data" are its "trade secrets"), 16 ("the methodologies are [Nielsen's] trade secrets"), 17 ("trade secret methodologies").

Nielsen's trade secret algorithms or raw data.  Plaintiff will not be able to reverse engineer the final numbers to determine the algorithms or calculations used to arrive at those numbers.  Therefore, Nielsen has not established that its trade secrets are at risk of being produced.

Nielsen makes a distinction between the production of business records and the production of the products of a business.  (*See* ECF No. 77-1 at 7.)  Nielsen points to an illustration made by the California Court of Appeal in *Urban Pac. Equities Corp. v. Superior Court*, 59 Cal. App. 4th 688 (1997), in which the court notes that "it would be improper to serve Ford Motor Company with a subpoena demanding it produce a Ford Explorer, 'because the Explorer is Ford's product.'"  (ECF No. 77-1 at 7 (quoting *Urban Pac. Equities*, 59 Cal. App. 4th at 693).)  To the Court, this underlines the distinction between a Rule 45 analysis and Rule 26 analysis.  The information at issue here may be Nielsen's *product*, but the same documents and data have become Defendant's *records*.  The discovery at issue is information Defendant acquired from Nielsen and then relied upon in the operation of its business.[12]  The Court is not persuaded that the authority cited by Nielsen supports the proposition that Plaintiff cannot obtain Defendant's business records from Defendant because those records were generated by Nielsen before being licensed to Defendant.

The Court is similarly unpersuaded by Nielsen's analogies to the plaintiff who tried to use a subpoena to obtain investigation and testing documents from Consumer Reports, *In re Consumers Union of United States, Inc.*, 27 F.R.D. 251 (S.D.N.Y. 1961), and to the parties who tried to use subpoenas to obtain a professor's research on SUV rollover accidents, *In re Snyder*, 115 F.R.D. 211 (D. Ariz. 1987), in order to avoid retaining experts.  (ECF No. 77-1 at 8, 12.)  Here, Plaintiff is seeking to discover from Defendant relevant

---

[12]     Plaintiff represents that Defendant's Rule 30(b)(6) witness stated that Defendant uses Nielsen's information "in the ordinary course of business."  (ECF No. 85 at 7.)

17-cv-01243-JAH (JLB)

data obtained and used by Defendant in the conduct of its business. This practice is not subject to the same abuses as a party seeking to obtain from a non-retained expert "the benefit of [his or her] work and conclusions free of cost." *See In re Consumers Union of United States, Inc.*, 27 F.R.D. at 254; *see also In re Snyder*, 115 F.R.D. 211, 215 (D. Ariz. 1987) (addressing the burden on the subpoenaed "researcher who is a stranger" to the lawsuit, noting that the expert protections of Federal Rule of Civil Procedure 26 do not extend to such an expert, and highlighting the great "potential for a chilling effect on research"). Nielsen provided something of value to Defendant—which Defendant paid for—and which Defendant is now compelled through the discovery process to provide to Plaintiff subject to a protective order. This is not the same as a "stranger" to the lawsuit being subpoenaed to produce the product of independent and unrelated research for which the third party has not been and will not be compensated. *Cf. Conroy*, J.C.C.P. 4446 ("[T]he implicit rationale of most of the case law cited by ACNielsen . . . focuses on the harm to ACNielson's business model if it is required to produce its product for free in response to subpoenas.") (ECF No. 77-5 at 3-4).

Nielsen also raises concerns that the current Protective Order issued in this case "does not expressly prevent the parties from seeking to depose Nielsen's statisticians, analysts and other personnel, to learn how the data reported to [Defendant] were collected and analyzed, and how the Nielsen reports were prepared." (ECF No. 77-1 at 16.) The Court finds this to be a valid concern. However, the Court also recognizes that Nielsen information of the sort sought in this litigation is routinely relied on by retained experts in class action litigation in district courts. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 943-47 (C.D. Cal. 2015); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1037-39 (C.D. Cal. 2018); *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2015 WL 10786035, at *8-10 (C.D. Cal. June 23, 2015). As noted by one district court, "Nielsen data is widely available and often accepted by federal courts." *McCrary v. Elations Co. LLC*, No. EDCV 13-0242 JGB (SPX), 2014 WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) (citing *Matrix Essentials v. Quality King Distribs., Inc.*, 522 F.

Supp. 2d 470, 474 (E.D.N.Y. 2007); *United States v. Am. Soc'y of Composers, Authors & Publishers*, 559 F. Supp. 2d 332, 411 (S.D.N.Y. 2008), vacated on other grounds, 627 F. 3d 64 (2d Cir. 2010); *E & J Gallo v. Proximo Spirits, Inc.*, No. CV–F–10–411 LJO JLT, 2012 WL 273076 (E.D. Cal. Jan. 30, 2012); *cf. Brazil v. Dole Packaged Foods*, LLC, No.: 12–CV–01831–LHK, 2014 WL 5794873, at *7 (N.D. Cal. Nov. 6, 2014) (taking no issue with expert's use of similar data from Information Resources, Inc.)). There is no suggestion in these cases that a Nielsen employee was deposed, and Nielsen cites to no instances in which a deposition was requested or has occurred. Therefore, although the Court recognizes Nielsen's concerns, its concerns about being dragged into this litigation appear premature at best.[13]

Lastly, Nielsen suggests that Plaintiff should retain her own expert to determine the number of Osteo B-Flex products sold and the price of each of those products at the time of sale. However, the information before the Court suggests that this would not be possible, as the majority of retailers do not retain complete information. In fact, Costco is the only retailer or wholesaler identified by Plaintiff that provides complete information. Therefore, the Nielsen data is the best information available. Whether that information is sufficient for purposes of calculating damages is not for this Court to decide.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Nielsen's motion for a protective order precluding Defendant from disclosing in discovery "the confidential Nielsen data or reports licensed to it." (ECF No. 77-1 at 18.) Accordingly, no later than **five (5) court days** from the date of this Order, Defendant shall (1) produce the documents requested by Plaintiff with respect to Nielsen, and (2) supplement its response to Plaintiff's

---

[13] Plaintiff states in response to Nielsen's concerns, that a deposition of a Nielsen employee "seems unnecessary – [Defendant] does not dispute the reliability of the straightforward information . . . ." (ECF No. 85 at 7.) Plaintiff adds that "the Excel sheet listing sales numbers is readily understandable and, if necessary, [Defendant] can explain it." (*Id.* at 16.)

Interrogatories Nos. 8-10 with information obtained from Nielsen. (*See* ECF No. 72 at 16-17.)

As noted above, nothing in this Order precludes Nielsen or Defendant from designating the information as "Confidential" or "Highly Confidential" pursuant to the terms of the existing Protective Order, or the parties from jointly moving to modify the existing Protective Order to specifically address the Nielsen information. (*See* ECF No. 49.) Nor does this Order preclude the parties from entering stipulations reasonably acceptable to Nielsen.

**IT IS SO ORDERED.**

Dated: August 9, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge

17-cv-01243-JAH (JLB)