# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA SEEGERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REXALL SUNDOWN, INC.,<br><br>Defendant. | Case No.: 3:17-cv-01243-BEN-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(2) DENYING AS MOOT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. Nos. 107, 101] |

Before the Court is Plaintiff Sandra Seegert's ("Plaintiff") Motion for Class Certification, and Defendant Rexall Sundown, Inc.'s ("Defendant") Motion for Summary Judgment. The Court finds them suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1).

## **BACKGROUND**

This case arises out of Defendant's alleged false statements about the joint health

benefits of its Osteo Bi-Flex product line.[1] Plaintiff alleges she purchased Osteo Bi-Flex Triple Strength on February 20, 2017, from a Walgreens retail store, for approximately $31.99.[2] (Doc. No. 1 ¶¶ 11-12.) Defendant's packaging and advertisements for Osteo Bi-Flex represent it supports joint health, as well as improving "Range of Motion," and "helps strengthen joints while helping to maintain joint cartilage essential for comfortable joint movement".[3] According to the Complaint, these representations are false because studies show that Defendant's Osteo Bi-Flex products, cannot provide the promised benefits.[4] *Id.* ¶ 13.

The Complaint alleges that despite clinical studies demonstrating the ineffectiveness of Osteo Bi-Flex, Defendant continues to convey that its Osteo Bi-Flex products are joint health supplements capable of supporting/benefiting joint health.[5] (Doc. No. 1 ¶ 70.) As a result, "Plaintiff and the class members have been and will continue to be deceived or mislead by Defendant's false and deceptive representations." *Id.* ¶ 73.

---

[1] Osteo Bi-Flex is a joint health supplement containing 1,500 mg of glucosamine hydrochloride in pill form. (Doc. No. 101 at 2.)

[2] Defendant's glucosamine products it issue are sold under the "Osteo Bi-Flex" brand name (collectively the 'Osteo Bi-Flex Products'): Osteo Bi-Flex One Per Day; Osteo Bi-Flex Triple Strength; Osteo Bi-Flex Triple Strength MSM; and Osteo Bi-Flex Triple Strength with Vitamin D. (Doc. No. 1 at 3.)

[3] "To reinforce the overall joint health benefits message, the front label of the Osteo Bi-Flex One Per Day, Osteo Bi-Flex Triple Strength, and Osteo Bi-Flex Triple Strength with Vitamin D products states, '**JOINT SHIELD**' and that it 'Shows Improved Joint Comfort within **7 Days!**' Similarly, the front label of the Osteo Bi-Flex Triple Strength MSM product states that it 'Supports Cartilage Health' and 'Helps Strengthen Your Joints.'" (Doc. No. 1 ¶ 24.)

[4] Defendant, through its advertisements and packaging/labeling, has consistently conveyed to consumers throughout the United States that its products support and promote joint health. *Id.* ¶ 22.

[5] For example, Plaintiff alleges that Defendant knew, but failed to disclose, or should have known, that the Osteo Bi-Flex products cannot benefit joint health and that well-conducted, clinical studies have found the Osteo Bi-Flex products' primary ingredients unable to support or benefit joint health. *Id.* ¶ 72.

The Complaint asserts three state law causes of action: (1) violation of the California Unfair Competition Law ("UCL"); violation of the California Consumers Legal Remedies Act ("CLRA"); and (3) Violation of the California False Advertising Law ("FAL").[6] *Id.* ¶¶ 87-123. The prayer for relief asks for restitution and disgorgement of Defendant's revenues, actual, statutory and punitive damages, and attorney's fees and costs. (Doc. No. 1 at 27.) Plaintiff now moves to certify a class while Defendant seeks summary judgment of all of Plaintiff's claims. Because Defendant is entitled to summary judgment, Defendant's motion is addressed first.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on all of Plaintiff's claims based on the following four grounds: (1) Plaintiff's state law false advertising claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*; (2) Plaintiff has not presented any evidence pertaining to Rexall's proprietary ingredient Joint Shield™ 5-LOXIN Advanced® which Plaintiff claims to have relied upon in purchasing Osteo Bi-Flex® Triple Strength[7]; (3) Plaintiff has proffered no evidence of actual falsity regarding any other label claims on Rexall's product line; (4) Plaintiff's California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code 17200, *et* seq, claim should be dismissed because it only allows for equitable remedies. (Doc. No. 107 at 102-03.)

Summary judgment is appropriate "if the movant shows that there is no genuine

---

[6] These statutes are designed to protect consumers who are exposed to materially misleading package labeling and advertisements, and under the statutes, materiality is measured using objective criteria. *See In re Tobacco II*, 46 Cal. 4th 298, 312 n.8, 327 (2009) (discussing the FAL and UCL); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 125 (2009) (discussing the CLRA).

[7] Joint Shield™ 5-LOXIN Advanced® is the key ingredient in each of the Products and the basis for the only label statement that Plaintiff claims to have relied upon in purchasing Osteo Bi-Flex® Triple Strength. (Doc. No. 107 at 3.)

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*.

**Whether the NELA Preempts Plaintiff's State Law Claims**

Turning to the substance of the summary judgment motion, Defendant first argues that the NELA expressly preempts Plaintiff's state law claims.

Federal preemption can be either express or implied. *See Fid. Fed. Sav. & Loan Ass'n v. de law Cuesta*, 458 U.S. 141, 152-53 (1982). Express preemption exists when a statute explicitly addresses preemption. *See Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009). The federal Nutrition Labeling and Education Act ("NLEA") expressly preempts state law. NELA "preempts state law requirements respecting any claim of the type described in section § 343(r)(1) of this title made in the label or labeling of food." 21 U.S.C. § 343-1(a)(5). The NLEA classifies dietary supplements as food; indeed, § 343-1 ("National uniform nutrition labeling") and § 343 ("Misbranded food") fall under the NLEA's "Food" subchapter. "Thus, a structure/function claim also constitutes a claim 'made in the label or labeling of food.'" *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) (citing 343-1(a)(5)). The

NLEA provides that no state may "directly or indirectly establish … any requirement for the labeling of food that is not identical" to the federal requirements. 21 U.S.C. § 343-1(a)(5). The phrase "not identical to" means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or label of food [that] … [a]re not imposed by or contained in the applicable [federal regulation] … or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation]. 21 C.F.R. § 100.1(c)(4). Defendant's labeling statements about which Plaintiff complains are structure/function claims.

The NLEA distinguishes between "*structure/function claims*" and "*disease claims*" that manufacturers make about their products. A structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function," but "may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6). A disease claim, conversely, "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly (such as by claiming that a product treats a disease's "characteristic signs or symptoms"). 21 C.F.R. § 101.93(g)(2)(ii). NELA, Structure/function claims must meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the Food and Drug Administration ("FDA") has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6).

Although the FDCA requires manufacturers to have substantiation for their structure/function claims, California law does not allow private plaintiffs to demand substantiation for advertising claims. *Dachauer*, 913 F.3d at 847 (9th Cir. 2019) (citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm, Inc.*, 107 Cal. App. 4th 1336, 1344 (2003)). The FDCA does not define the term "substantiation," but FDA

guidance advances a common-sense interpretation of "substantiation," as meaning "competent and reliable scientific evidence." *See Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 93 (1st Cir. 2016). The FDA has published guidance in the Federal Register discussing, among other things, acceptable structure/function claims. *Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body*, 65 Fed. Reg. 1000-01 (Jan. 6, 2000). In relevant part, the FDA states that "'joint pain' is characteristic of arthritis … [but] [t]he claim 'helps support cartilage and joint function,' on the other hand, would be a permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain." *Id*. at 1016-17.

In this case, Defendant relies on the guidance issued by the FDA discussing acceptable structure/function claims and analogizes this case to *Dachauer*. The FDA has published guidance in the Federal Register discussing, among other things, acceptable structure/function claims. (*See Supra*.) "The guidance recognizes that structure/function claims may use general terms such as 'strengthen,' 'improve,' and 'protect,' as long as the claims 'do not suggest disease prevention or treatment.'" *Dachauer*, 913 F.3d at 847 (citing 65 Fed. Reg. at 1028.)

As applied here, the NLEA's preemption provision preempts Plaintiff's CLRA, UCL and FAL claims, and this conclusion is hardly novel. What is novel is Plaintiff's implied disease claim. Specifically, Plaintiff alleges Defendant's representations are improper structure/function claims because they imply effects on characteristic signs and symptoms of osteoarthritis, a disease claim.[8] *Id*. at 12. Despite Plaintiff's assertions, the representations do not purport to "reduce" or "improve" anything nor do they mention

---

[8] In this case Plaintiff attempts to argue that labeling statements like: "improves mobility," "joint discomfort," "joint mobility," "flexibility," "'Osteo Bi-Flex,' and even 'we created Osteo Bi-Flex®, the only joint care brand with Joint Shield, to help … and improve mobility,' is an implied disease claim because it 'suggests it is intended to treat, prevent, or mitigate diseases'" just to name a few. (Doc. No. 141 at 12-13.)

"joint pain." Furthermore, the representations do not suggest treatment or prevention of a disease. As a result, each satisfies the requirements under the NLEA for structure/function claims. Therefore, the representations are proper structure/function claims according to the federal requirements. *See* 65 Fed. Reg. at 1016-17.

Plaintiff further avers that even if the representations are found to be permissible structure/function claims, it bears little merit on the analysis, since state law challenges must either impose greater, or inconsistent burdens, to those under the FDCA, before the claims can be preempted.[9] (*See* Doc. No. 141 at 13-14.) Notably, however, the Ninth Circuit took a contrary position in *Dachauer*, finding that it matters a great deal to the analysis how the representations are ultimately classified. For example, as applied to the facts at hand, "Plaintiff's argument would vitiate the FDCA's distinction between disease claims and structure/function claims. This is because the FDA allows manufacturers of supplements to make general claims … and to substantiate them with evidence that a supplement has some structural or functional effect on a given part of the human body." *Dachauer*, 913 F.3d at 848 (citing 65 Fed. Reg. at 1012). Unlike *Dachauer*, where the court concluded the NLEA did not preempt plaintiff's claim that the defendant's structure/function claim about immune health was misleading[10], Plaintiff makes no such claim here. In fact, the product labels do not even refer to joint pain; instead, each reference supporting joint function. Thus, it is accurate to say that "the statements Plaintiff identifies as misleading are archetypal structure/function claims of the sort the

---

[9] "The FDCA expressly prohibits structure/function statements that are 'false or misleading in any particular …' 21 U.S.C. 343(a); *see also Dachauer*, 913 F.3d at 847-48 (false and misleading prohibition applies to dietary supplements)." Plaintiff asserts that because California consumer protection statutes use the identical standards, Plaintiff's CLRA causes of action are not preempted by the FDCA, as other courts have held. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018) (no preemption because FDCA does not authorize deceptive labels.) (*See* Doc. No. 141 at 14.)"

[10] The Court found it misleading because the supplements *increased* the risk of all-cause mortality.

7

FDA has determined to be appropriate."[11] (Doc. No. 107 at 9.)

It also bears noting that District Judge Cathy Ann Bencivengo dismissed similar CLRA and UCL claims brought by Plaintiff's counsel in a similar glucosamine supplement case because she found them to be proper structure/function claims. *Kroessler v. CVS Health Corp.*, No. 19-cv-277, 2019 WL 2164054, *5 (S.D. Cal. May 16, 2019) (notice of appeal filed). Her reasoning is persuasive and adopted here. In this case, "[r]ather than actually focusing on the language that the consumer sees," Plaintiff chose to "rely on internal Rexall documents to theorize that Rexall 'intended' to make implied disease claims." (Doc. No. 185 at 4.) This approach falls flat on analysis however because Defendant complied with federal labeling requirements for dietary supplements.

Therefore, Plaintiff's state law false advertising claims under the CLRA, UCL, and FAL are expressly preempted by the NLEA.

## II. Plaintiff's Motion for Class Certification

Having granted Defendant's motion for summary judgment, Plaintiff's motion for class certification is hereby DENIED as moot.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES as moot** Plaintiff's Motion for Class Certification.

**IT IS SO ORDERED.**

Dated: April 3, 2020

HON. ROGER T. BENITEZ
United State District Judge

---

[11] "Plaintiff challenges the following Product statements: 'JOINT HEALTH'; 'JOINT SHIELD'; 'Shows Improved Joint Comfort within 7 Days!'; 'Range of Motion'; 'Strengthen Joints'; 'Support Flexibility'; 'Support Mobility'; '[S]upports joint comfort'; '[D]efend your joints'; '[H]elps strengthen joints while helping to maintain joint cartilage essential for comfortable joint movement'; and '#1 Pharmacist Recommended Brand.'" (Doc. No. 107 at 9, n*6.)